UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GIANT MERCHANDISING, a California partnership, ) ) ) ) Plaintiff, ) ) vs. ) ) JOHN DOES 1-100, individuals, ) JANE DOES 1-100, individuals, ) and XYZ COMPANY, business ) entity form unknown, inclusive, ) ) Defendants. ) ) | CIVIL ACTION NO.<br><br>04 1 1 2 2 3 |

## DECLARATION OF THOMAS DONNELL

I, THOMAS DONNELL, hereby declares as follows:

1. I make this declaration in support of Giant Merchandising's ("Plaintiff") ex-parte application for: a temporary restraining order; seizure order; and a preliminary injunction to issue and thereafter a national seizure order in the above referenced matter.

2. I have personal knowledge of the facts set forth herein and am authorized by Plaintiff to make this declaration. If called as a witness, I could and would be able to testify competently to such facts.

3. Plaintiff is engaged in the business of manufacturing, distributing and selling authorized merchandise such as T-shirts, jerseys, sweatshirts, posters, among other goods bearing the names, likenesses and copyrights owned by popular musical groups and performers (collectively "Tour Merchandise").

4.  Plaintiff has obtained the exclusive rights to distribute Tour Merchandise at all concerts on the current North American concert tour (the "Tour") of the performing group **"NO DOUBT"**(the "Artist"). Plaintiff has expended considerable monies in obtaining the exclusive rights to distribute the Tour Merchandise of the Artist.

5.  I am responsible for the merchandising and security on the Tour. A copy of the Artist's current tour itinerary is attached as Exhibit "A" and is incorporated by this reference as though fully set forth herein. Because of the popularity of the Artist, more dates will be added.

6.  I am Director of Tours for Plaintiff Giant Merchandising. My responsibilities include supervising merchandising and security on popular music tours.

7.  **"NO DOUBT"** is the tradename of this prominent and successful musical performing group. The group has released 5 albums which have sold over 15 million units. Their well known albums include "Tragic Kingdom" (which has sold over 10 million units) and "Rock Steady" (which has sold nearly 3 million units). The Artist's well known singles include "Just A Girl," "Don't Speak," "Ex-Girlfriend," "Simply Kind of Life," "Hey Baby,"and "Underneath (It All)." The Artist has been nominated for and has won numerous awards, including winning a "Grammy" award from the National Academy of Recording Arts and Sciences in 2003 for Best Pop Performance by a Group or Duo. The Artist's performances have been broadcast on MTV, VH1 and other cable and network programs broadcast nationwide. The Artist has also appeared on television programs broadcast nationwide including Saturday Night Live, Jay Leno and Conan O'Brien. The Artist has also appeared in numerous magazines distributed nationwide, including the covers of Rolling Stone and People magazine.

8. I am informed and believe that the Artist has obtained federal registration for their trademark, Registration Number 2416708 for use in connection with clothing, namely, caps, shirts, pants, shorts and jackets, publications, namely, posters, calendars and photographs, ornamental novelty badges and pins, and cloth patches for clothing, and entertainment services in the nature of live performances by a musical group; and Registration No. 2124089 for use in connection with wearing apparel, namely, T-shirts, shirts, shorts, pants, sweat shirts, sweat pants, hats, visors, shoes, sandals, and belts.

9. This tour is highly anticipated and almost all of the Artist's concert dates are sold out. Because of the Artist's status among popular music enthusiasts, the tour is expected to be a very successful and Plaintiff anticipates that other dates will be added to the current Tour itinerary. The Tour involves many large-capacity venue performances, i.e., arenas seating in excess of 10,000 people. Gross income from the sales of Tour Merchandise is expected to be very substantial.

10. The Artist derives income and promote their images in part from sales of recordings and live performances, and in part through the sale of merchandise associated with them. The Artist and Plaintiff spend a great deal of care, time and money in developing the merchandise associated with the concert tours. Care is taken that the Tour Merchandise bearing the Artist's marks or likenesses are of a high quality and are appropriate to their images.

11. Tours by the Artist, and other artists of their stature, have recurring problems with individuals who sell unauthorized Tour Merchandise near, at and sometime inside a concert venue. These individuals are referred to as "Bootleggers," their activities are known as "Bootlegging" and their goods are referred to as "Bootleg Merchandise" or "Unauthorized Merchandise."

12. On previous tours by this Artist and other artists' tours, Defendant Bootleggers have appeared selling their unlawful goods. On this tour, which has recently begun, the Defendant Bootleggers have appeared to sell their Unauthorized Merchandise, but they refused to identify themselves to us unless we have "an order." In order to combat this on tours, Plaintiff and other merchandisers have obtained temporary restraining and seizure orders, and thereafter preliminary injunction and nationwide seizure orders to seize the unauthorized goods from the Defendants. See Certificate of Counsel of Cara R. Burns, filled concurrently herewith.

13. In my experience, the Bootlegging problem has grown with the popularity of popular music tours. In virtually every instance, the Defendants sell identical shirts, indicating that they are supplied from a common source. Individual Bootleggers are recognized from venue to venue as they follow the tours.

14. My staff and I have followed a substantial amount of tours of various artists and frequently observe the same individuals selling Unauthorized Merchandise at many of the venues for each artist. Organized Defendant Bootleggers generally follow a tour themselves or arrange to have local individuals sell the Unauthorized Merchandise for them. On the past few tours, I have seen a few, similar designs being sold by the Defendants throughout the tour.

15. In the present circumstances, given the Artist's popularity, it is not difficult to understand the motives of the Defendants. All of the concerts on this Tour are expected to be sold out or nearly sold out. The Artist will perform before hundreds of thousands of people by the end of the Tour. The fans attending the various concerts frequently seek to purchase a souvenir, such as a T-shirt. Defendant Bootleggers are typically (and were in this case) located outside the concert

venues and therefore have the first and last opportunity to make these sales. Further some Defendants sell their Unauthorized Merchandise inside the venues.

16. Defendant Bootleggers have become very experienced. When I inform the Defendants that they are selling Unauthorized Merchandise, they just walk away and continue to sell the Unauthorized Merchandise. The Defendants did not respond when I ask for their names. Defendants ignore my requests or the requests of my security personnel to stop selling unauthorized merchandise. The Defendant Bootleggers respond that they want to see my "injunction" or "order" or else they will not stop their unlawful activities. From the nature and context of their statements, it is obvious that the "order" or "injunction" they refer to is a search, seizure and impoundment order similar to the one Plaintiff seeks from this court.

17. Based on my experience, these Defendants will appear at every performance set forth in Exhibit A to sell Unauthorized Merchandise, unless this Honorable Court grants to Plaintiff the order it seeks. Moreover, there appears to be a pattern to their Unauthorized Merchandise; each sell one of a few designs with the trademarks, service marks, trade names, likenesses, images or tour logos of the Artist. Also some of these designs have all of the Tour dates on them, indicating that they will continue to go from venue to venue and sell their Unauthorized Merchandise.

18. Bootlegging activities greatly injure musical performing artists, including the Artist and legitimate merchandisers, including Plaintiff, in two ways. First, the Defendants are not bound by contract to provide first-quality apparel and graphic designs, as is required of Plaintiff. Second, the Defendants can drastically undersell the legitimate merchandiser, because, unlike Plaintiff, Defendants have no obligation to pay the Artist royalties or and do not have to pay any part of their

gross sales receipts to the concert venue. This ability to undersell the legitimate Tour Merchandise is also enhanced by the fact that Defendants do not collect or pay sales or income taxes.

19. The consumer, the fans of the Artist also suffer. Unauthorized Merchandise is an inferior imitation which rarely last very long. The quality of the T-shirts and the designs are poor; many T-shirts appear to be seconds and the colors on the designs tend to "run" or "bleed" into each other. The fans are disappointed and, in their confusion as to the source of the Unauthorized Merchandise, blame the artists. This affects future legitimate sales and also tends to create a negative feeling by the fans directed against the artists, which may in turn cause decreased record sales and concert attendance.

20. The Defendants' Unauthorized Merchandise is intended and will cause the general public to believe that their Unauthorized Merchandise is authorized, approved and sponsored by the Artist. Consequently, not only does the sale of this Unauthorized Merchandise violate the Plaintiff's exclusive rights, but also causes the general public to be adversely affected and irreparably harms the Plaintiff's and the Artist's reputations for excellence and integrity in the legitimate Tour Merchandise.

21. The unchallenged presence of Defendant Bootleggers in our marketplace destroys the market and damages Plaintiff's business at every level. Our business has been built on making authorized Tour Merchandise available throughout the United States on the Artist's Tour.

22. The precise damage to the Plaintiff is incalculable. The Unauthorized Merchandise sells for approximately half the price (or less) of the genuine Tour Merchandise and the people involved in the illegal merchandising activities keep no records. On the basis of my past experience

6

with such Defendants, I believe these Defendants would dispose of or destroy any Unauthorized Merchandise or related documents should legal proceedings be commenced against them.

23. The incalculable damage caused by the Defendants severely diminishes our ability to make these products available, to say nothing of depriving the rightful owners of their return. We must therefore do everything we can to curtail the Bootlegging activities of the Defendants and this is why we are seeking the assistance of this Honorable Court to obtain an order allowing the seizure of Unauthorized Merchandise.

24. I believe the difficulties in identifying the Defendants, the fact that they have no fixed place of business and no assignable assets, make them virtually immune to normal process or to any process except by way of restraining order against persons unknown and allowing the seizure of the Unauthorized Merchandise pending a final disposition by this Honorable Court.

25. Plaintiff is a substantial and successful business and will safely be able to hereby undertake to meet any order made to compensate the Defendants or any of them for any damages suffered by them as a result of any order obtained on our behalf. However, in my experience, no Bootlegger has ever appeared at an order to show cause hearing or sought relief in the countless number of nationwide search, seizure and impoundment orders.

26. In short absent significant protection from the courts, the Defendants have an insurmountable advantage over the artists and legitimate merchandisers who obtain the right to use performers names, likenesses and related rights. Left unprotected, merchandisers will be unable to offer performers appropriate sums for these rights, pertaining to artists' names and likenesses, and related tour logos. This in turn limits the performers, ability to stage unique and exciting concerts for

their fans and can, in some instances, prevent an artist from touring altogether. The injury affects the artist, the exclusive licensee (Plaintiff), and the fans.

I declare under penalty of perjury under the laws of the United States and the State of Massachusetts that the foregoing is true and correct.

Executed June __, 2004.

_____
THOMAS DONNELL