DATE: 6-10-04

HCB

# FIDELITY AND DEPOSIT COMPANY OF MARYLAND
HOME OFFICE BALTIMORE, MD 21203

FILED
CLERKS OFFICE

2004 JUN -9 P 12: 22

Bond Number CGB-8754992

U.S. DISTRICT COURT
DISTRICT OF MASS.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---

GIANT MERCHANDISING,
A California partnership,

          Plaintiff,

vs.

JOHN DOES 1-100, individuals,
JANE DOES 1-100, individuals,
and XYZ COMPANY, business
entity form unknown, inclusive,

          Defendants.

Undertaking for
Temporary Restraining Order,
Order of Seizure and
Preliminary Injunction

Civil Action No. 04 CV 11223 RWZ

---

**WHEREAS**, by an Order of the above entitled Court, Plaintiff is required to file an undertaking in the sum of **ONE THOUSAND FIVE HUNDRED AND 00/100THS-----------($1,500.00)DOLLARS**, pursuant to a Temporary Restraining Order, Order of Seizure and Preliminary Injunction restraining and enjoining Defendants, from the commission of certain acts as more fully set forth in said Order.

**NOW, THEREFORE**, the **FIDELITY & DEPOSIT COMPANY OF MARYLAND** a corporation organized and existing under the laws of Maryland and authorized to transact the business of Surety, in the State of New York at 105 East 17th Street, New York, NY 10003, as Surety, in consideration of the premises and the issuance of said Temporary Restraining Order, Order of Seizure and Preliminary Injunction does hereby undertake to pay all costs and disbursements that may be decreed to said Defendants and such damages not exceeding the amount of **ONE THOUSAND FIVE HUNDRED AND 00/100THS ---------($1,500.00)DOLLARS**, as Defendants may sustain by reason of said Order the same be wrongful and without sufficient cause.

IN WITNESS WHEREOF, we have set our hand and seal on the 8th day of June, 2004.

                                   **FIDELITY & DEPOSIT COMPANY OF MARYLAND**

                                   _____
                                   Maria Sponza,          Attorney-In-Fact

## EXTRACT FROM BY-LAWS OF FIDELITY AND DEPOSIT COMPANY OF MARYLAND

"Article VI, Section 2. The Chairman of the Board, or the President, or any Executive Vice-President, or any of the Senior Vice-Presidents or Vice-Presidents specially authorized so to do by the Board of Directors or by the Executive Committee, shall have power, by and with the concurrence of the Secretary or any one of the Assistant Secretaries, to appoint Resident Vice-Presidents, Assistant Vice-Presidents and Attorneys-in-Fact as the business of the Company may require, or to authorize any person or persons to execute on behalf of the Company any bonds, undertaking, recognizances, stipulations, policies, contracts, agreements, deeds, and releases and assignments of judgements, decrees, mortgages and instruments in the nature of mortgages,...and to affix the seal of the Company thereto."

## CERTIFICATE

I, the undersigned, Assistant Secretary of the FIDELITY AND DEPOSIT COMPANY OF MARYLAND, do hereby certify that the foregoing Power of Attorney is still in full force and effect on the date of this certificate; and I do further certify that the Vice-President who executed the said Power of Attorney was one of the additional Vice-Presidents specially authorized by the Board of Directors to appoint any Attorney-in-Fact as provided in Article VI, Section 2, of the By-Laws of the FIDELITY AND DEPOSIT COMPANY OF MARYLAND.

This Power of Attorney and Certificate may be signed by facsimile under and by authority of the following resolution of the Board of Directors of the FIDELITY AND DEPOSIT COMPANY OF MARYLAND at a meeting duly called and held on the 10th day of May, 1990.

RESOLVED: "That the facsimile or mechanically reproduced seal of the company and facsimile or mechanically reproduced signature of any Vice-President, Secretary, or Assistant Secretary of the Company, whether made heretofore or hereafter, wherever appearing upon a certified copy of any power of attorney issued by the Company, shall be valid and binding upon the Company with the same force and effect as though manually affixed."

IN TESTIMONY WHEREOF, I have hereunto subscribed my name and affixed the corporate seal of the said Company,

this ____8TH____ day of _____JUNE_____, __2004__.

*Assistant Secretary*



# FIDELITY AND DEPOSIT COMPANY
OF MARYLAND
3910 KESWICK ROAD, BALTIMORE, MD 21203

Statement of Financial Condition
As Of December 31, 2003

### ASSETS

| | |
|---|---:|
| Bonds | $ 125,371,211 |
| Stocks | 35,569,210 |
| Mortgage Loans | 2,514,286 |
| Cash in Banks and Offices and Short Term Investments | 1,188,921 |
| Other Accounts Receivable | 1,455,823 |
| TOTAL ADMITTED ASSETS | $ 166,099,451 |

### LIABILITIES, SURPLUS AND OTHER FUNDS

| | | |
|---|---:|---:|
| Reserve for Taxes and Expenses | | $ 154,962 |
| TOTAL LIABILITIES | | $ 154,962 |
| Capital Stock, Paid Up | $ 5,000,000 | |
| Surplus | 160,944,489 | |
| Surplus as regards Policyholders | | 165,944,489 |
| TOTAL | | $ 166,099,451 |

Securities carried at $15,107,004 in the above statement are deposited as required by law.

Securities carried on the basis prescribed by the National Association of Insurance Commissioners. On the basis of December 31, 2003 market quotations for all bonds and stocks owned, the Company's total admitted assets would be $166,895,955 and surplus as regards policyholders $166,740,637.

I, DAVID A. BOWERS, Corporate Secretary of the FIDELITY AND DEPOSIT COMPANY OF MARYLAND, do hereby certify that the foregoing statement is a correct exhibit of the assets and liabilities of the said Company on the 31st day of December, 2003.

*Corporate Secretary*

State of Illinios
City of Schaumburg } SS:

Subscribed and sworn to, before me, a Notary Public of the State of Illinois, in the City of Schaumburg, this 27th day of February, 2004.

*Notary Public*

OFFICIAL SEAL
NANCY W. SIEDER
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES 7-14-2005



ZURICH

# THIS IMPORTANT DISCLOSURE NOTICE IS PART OF YOUR BOND

We are making the following informational disclosures in compliance with The Terrorism Risk Insurance Act of 2002. No action is required on your part.

### Disclosure of Terrorism Premium

The premium charge for risk of loss resulting from acts of terrorism (as defined in the Act) under this bond is $__waived__. This amount is reflected in the total premium for this bond.

### Disclosure of Availability of Coverage for Terrorism Losses

As required by the Terrorism Risk Insurance Act of 2002, we have made available to you coverage for losses resulting from acts of terrorism (as defined in the Act) with terms, amounts, and limitations that do not differ materially as those for losses arising from events other than acts of terrorism.

### Disclosure of Federal Share of Insurance Company's Terrorism Losses

The Terrorism Risk Insurance Act of 2002 establishes a mechanism by which the United States government will share in insurance company losses resulting from acts of terrorism (as defined in the Act) after a insurance company has paid losses in excess of an annual aggregate deductible. For 2002, the insurance company deductible is 1% of direct earned premium in the prior year; for 2003, 7% of direct earned premium in the prior year; for 2004, 10% of direct earned premium in the prior year; and for 2005, 15% of direct earned premium in the prior year. The federal share of an insurance company's losses above its deductible is 90%. In the event the United States government participates in losses, the United States government may direct insurance companies to collect a terrorism surcharge from policyholders. The Act does not currently provide for insurance industry or United States government participation in terrorism losses that exceed $100 billion in any one calendar year.

### Definition of Act of Terrorism

The Terrorism Risk Insurance Act defines "act of terrorism" as any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States:
1. to be an act of terrorism;
2. to be a violent act or an act that is dangerous to human life, property or infrastructure;
3. to have resulted in damage within the United States, or outside of the United States in the case of an air carrier (as defined in section 40102 of title 49, United 17 States Code) or a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), or the premises of a United States mission; and
4. to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

But, no act shall be certified by the Secretary as an act of terrorism if the act is committed as part of the course of a war declared by Congress (except for workers' compensation) or property and casualty insurance losses resulting from the act, in the aggregate, do not exceed $5,000,000.

These disclosures are informational only and do not modify your bond or affect your rights under the bond.

Copyright Zurich American Insurance Company 2003

~0050749.doc